IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MARSHA TWYMAN
3514 Hoby Court
Virginia Beach, Virginia 23462

and

PEDRO GARCIA
3015 West Ave., #203
Newport News, Virginia 23607

    Plaintiffs

v.                                                                Civil Action No. _2:08cv519_

MICHAEL W. HAGER, Acting Director,
United States Office of Personnel                   JURY TRIAL DEMANDED
Management
Theodore Roosevelt Building
1900 E St. NW
Washington, DC 20415

And

UNITED STATES OFFICE OF
PERSONNEL MANAGEMENT
Theodore Roosevelt Building
1900 E St. NW
Washington, DC 20415

    Defendants.

FILED
OCT 30 2008
CLERK, US DISTRICT COURT
NORFOLK, VA

## COMPLAINT

The Plaintiffs, Marsha Twyman and Pedro Garcia, by counsel, state as follows for their Complaint against the above-named Defendants (hereinafter "Agency" or "OPM"):

## NATURE OF THE CASE

1. The Plaintiffs were unlawfully discharged from their positions with OPM. Under applicable law, the Agency bore the burden of proving that Garcia's and Twyman's terminations were valid. They failed to meet this burden. Moreover, the management decisions taken to effect their terminations were tainted with racially discriminatory animus.

2. This action seeks review of a decision of the Merit Systems Protection Board finding that termination of the Plaintiffs was warranted. This is a "mixed case" in which the Plaintiffs will present challenges to their terminations that involve race discrimination claims and non-discrimination claims.

3. The gravamen of the non-discrimination claims is that the Agency's actions were in violation of 5 U.S.C. § 7701(c)(1)(A) in that: 1) the performance appraisal system under which the Plaintiffs were evaluated was never approved by OPM; and 2) the performance standards were invalid.

4. The race discrimination claims are reviewed by this Court *de novo*. The non-discrimination claims as presented and contained in the MSPB record are reviewed to determine whether the Agency action, findings, or conclusions were: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 2000e (5) (jurisdiction over Title VII cases); 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1343 (jurisdiction over civil rights cases); and 5 U.S.C. § 7703 (jurisdiction over cases concerning termination from civil service employment).

2

6.     The practices alleged herein were committed in the Norfolk Division of the Eastern District of Virginia making venue in this Court appropriate.

## PARTIES

7.     Marsha Twyman ("Twyman") is an African-American female and is a resident of the Commonwealth of Virginia. She is a citizen of the United States. She resides at 3514 Hoby Court, Virginia Beach, Virginia 23462.

8.     Pedro Garcia ("Garcia") is a male of Hispanic origin and is a resident of the Commonwealth of Virginia. He is a citizen of the United States. He resides at 3015 West Ave., #203, Newport News, Virginia 23607.

9.     Michael W. Hager is Acting Director of the United States Office of Personnel Management and is an appropriate Defendant in this action pursuant to 42 U.S.C. § 2000e-16(c).

10.    The United States Office of Personnel Management is an agency of the executive branch of the United States government.

## FACTS

11.    At the time of their respective removals, Garcia and Twyman each occupied the position of Investigator, GS-1810-12, Field Investigative Services Division (FISD), Office of Personnel Management, at the Field Operations Program in Virginia Beach, Virginia.

12.    Garcia and Twyman enjoyed long careers as federal security clearance investigators, first with the United States Department of Defense and later with the Office of Personnel Management. They both have significantly in excess of 20 years of experience investigating candidates for security clearances in various agencies of the United States government.

13.     At all times relevant to this matter, both Garcia and Twyman performed their duties in an exemplary manner.

14.     Both Garcia and Twyman were removed from federal service based on findings of unacceptable performance. The government's criticisms of their performance were not qualitative, rather they were quantitative in nature and had to do with the Plaintiffs' failure to meet production quotas.

15.     The Plaintiffs appealed their terminations to the MSPB. The MSPB denied their appeals and found their terminations to be warranted. The MSPB's decision became final on October 1, 2008.

16.     To meet its burden of justifying Plaintiffs' removals, OPM was required to prove by substantial evidence that it: (1) took its action under a performance appraisal system approved by OPM; (2) that OPM had valid performance standards and those standards, along with the critical elements of the employees' position, were communicated to the employees; (3) that the employees' performance was found to be unacceptable in one or more critical elements of their position; and (4) the Agency afforded the employees a reasonable opportunity to improve their performance. 5 U.S.C. § 7701 (c)(1)(A); 5 C.F.R. § 432.104.

17.     OPM failed to meet its burden because: (1) its performance appraisal system was not approved by OPM; and (2) the Agency did not have valid performance standards.

18.     In addition, and as a separate, distinct and independent basis warranting judgment for the Plaintiffs in this action, the managers responsible for terminating Garcia and Twyman discriminated against them in doing so because of their race. Further, African-American and Hispanic employees were treated in a disparate and materially adverse way regarding the application of OPM's performance standards.

19. After the terrorist attacks of September 11, 2001, the workload of FISD increased dramatically and investigative manpower did not increase commensurate with the workload.

20. OPM developed a performance appraisal system that employed metrics known as "sources per day" or "SPD" and "months of coverage per hour" or "MOC". These performance metrics sought to measure the number of information sources reviewed by each investigator in a day as well as the span of time of the candidates' life and/or work history reviewed in the investigation process. Under the system, if the investigator did not achieve a certain SPD or MOC production quota they were subject to discharge. Failing to meet their production quotas, and failures integrally bound to these quotas, were the bases cited for Plaintiffs' terminations.

21. There are numerous employees within OPM, including the Plaintiffs' field office, who were not minorities and who had MOC/SPD production averages equal to or below the Plaintiffs. No adverse action was taken against these employees.

22. In addition to its failure to demonstrate that the performance appraisal system was approved by OPM, the Agency failed to meet its burden of proving that the performance standards were "valid". Indeed, the performance standards were unlawful because they were known to require most agents to work off the clock in violation of the Fair Labor Standards Act and regulations implemented at 5 C.F.R. § 551 and codified at 29 U.S.C. § 216, et seq. The Agency's actions were in violation of 5 C.F.R. § 551.301 & 401-421. These regulations were routinely violated by OPM in that the Agency actually knew that the Plaintiffs and other employees were working off the clock in order to meet performance production standards.

23. OPM's violation of these standards has prejudiced the Plaintiffs and others in significant ways, including the following: 1) without working off the clock they fell short of performance goals; 2) working off the clock would have required them to violate regulations

5

proscribing same; and 3) the Agency, with actual knowledge of the practice, permitted the Plaintiffs' colleagues to work off the clock so that their production standards could be met. Only after Plaintiffs' performance was measured against this unlawful requirement were the Plaintiffs terminated from employment.

24.     OPM actually knew that most or nearly all Agency employees (employed by FISD/SR) were working off the clock to meet production standards. The Agency knew or should have known that employees who declined to work off the clock (which was a lawful and appropriate course of action) were unlawfully penalized and prejudiced because their production levels were inevitably lower then employees who worked off the clock. The Agency actually knew of these practices and, in effect, ratified and maintained a policy of requiring employees to work off the clock in order to meet Agency production standards.

25.     As measured against the entire history of FISD, these production standards were in place only a very short period of time. Almost immediately after Twyman's termination, they were discontinued because the Agency realized the full impact that this quota based performance appraisal system had on the integrity of human resources management within the Agency.

26.     OPM maintained a practice of forcing SPD and MOC production quotas upon FISD Southern Region employees that could not be met during normal working hours. As a result, employees met their quotas and goals by working on personal time.

27.     The elements of the Plaintiff's discrimination claims are as follows:

   a)     they are members of protected groups, i.e., Garcia is an Hispanic male and Twyman is an African-American female;

   b)     the Plaintiffs were similarly situated to individuals who were not members of their protected groups; and

c) the Plaintiffs were treated more harshly and in a materially adverse and disparate manner compared with the similarly situated individuals who were not members of their protected classifications.

28. The Defendants subjected the Plaintiffs to materially adverse terms and conditions of employment and terminated them based on their race. The Defendants committed these acts intentionally, in bad faith and with malice.

## COUNT I

### *The Terminations of the Plaintiffs Violated the Standards Set Forth at 5 U.S.C. § 7701(c)(1)(A).*

29. All allegations set forth in this Complaint are incorporated into this Count by reference.

30. The Agency's actions in terminating the Plaintiff were: the result of the Agency ignoring required procedures; arbitrary, capricious, constituted an abuse of discretion and were otherwise not in accordance with law; and unsupported by substantial evidence.

31. As a direct, actual and proximate result of the Defendants' actions, the Plaintiffs have suffered significant pecuniary and non-pecuniary losses including loss of salary, benefits, promotion opportunities as well as mental anguish, pain, suffering, humiliation and loss of quality of life.

**WHEREFORE**, each of the Plaintiffs respectfully pray that the Agency's actions in terminating them and the MSPB's final decision affirming same be overruled, that this Court enter an award of all back pay owing to Pedro Garcia and Marsha Twyman from the time of their termination, and that a hearing be held to determine the Plaintiffs' non-pecuniary damages, costs and fees, and that this Court, or a tribunal of competent jurisdiction, award same.

## COUNT II

### *Race Discrimination in Violation of Title VII*

32. All allegations set forth in this Complaint are incorporated into this Count by reference.

33. The Defendants intentionally and willfully discriminated against Garcia and Twyman because of their race when they terminated their employment as set forth herein.

34. The Defendants' actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.

35. As a direct, actual and proximate result of the Defendants' racial discrimination against Garcia and Twyman, each of the Plaintiffs has suffered significant pecuniary and non-pecuniary losses including loss of salary, benefits, promotion opportunities as well as mental anguish, pain, suffering, humiliation and loss of quality of life.

**WHEREFORE**, Marsha Twyman and Pedro Garcia each respectfully pray that this Court:

1) Order the Defendants to institute and carry out policies, practices and programs which provide equal employment opportunities to qualified individuals and which eradicate the effects of past and present unlawful employment practices;

2) Order the Defendants to make the Plaintiffs whole with payment of all pecuniary losses suffered as a result of the events set forth above, in amounts to be proved at trial;

3) Order the Defendants to make the Plaintiffs whole by providing compensation for all non-pecuniary damages including emotional pain, suffering, inconvenience, loss of quality of life, loss of career and mental anguish with prejudgment and postjudgment interest as applicable, in amounts to be proved at trial;

4) Order the Defendants to pay the Plaintiffs reasonable attorney's fees, expert fees and costs incurred in bringing and prosecuting this action, with prejudgment and postjudgment interest as applicable.

### JURY TRIAL DEMANDED

Plaintiffs request a jury trial on all issues raised in Count II of this Complaint.

Respectfully submitted,

MARSHA TWYMAN and PEDRO GARCIA

By: _____
Of Counsel

James H. Shoemaker, Jr., VSB No. 33148
Veronica E. Meade Sheppard, VSB No. 66727
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, Virginia 23602
Telephone: (757) 223-4580
Facsimile: (757) 223-4474
Jshoemaker@pwhd.com
vsheppard@pwhd.com