**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | | |
|---|---|---|
| **MARSHA TWYMAN,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO: 2:08cv519** |
| | ) | |
| **M. JOHN BERRY, Director,** | ) | |
| **United States Office of Personnel Management,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **UNITED STATES OFFICE OF PERSONNEL** | ) | |
| **MANAGEMENT,** | ) | |
| **Defendants.** | ) | |

**FEDERAL DEFENDANTS' COMBINED RESPONSE AND REPLY BRIEF
IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT AS TO COUNT I**

### *Introduction*

This brief encompasses defendant's response to plaintiff's motion for leave to file a partial summary judgment motion, as well as a reply to plaintiff's opposition to defendants' motion to dismiss and/or summary judgment as to Count I of the complaint.  Should leave be granted for plaintiff to file a summary judgment motion, this filing shall also serve as a response to that pleading.

### *Argument*

**I.     Plaintiff's motion for leave to file a summary judgment motion should be denied,
       and Count I dismissed for failure to prosecute.**

Plaintiff requests leave of court to file a belated summary judgment motion as to Count I.

Although defendants defer to the Court's discretion on this issue, it is respectfully asserted that

the motion should be denied.  *See Def. Memo*, pg. 2-3.  For the same reason, plaintiff's response

to defendants' motion should be disregarded, and Count I be dismissed for failure to prosecute.

There has never been any question that plaintiff's non-discrimination and discrimination

claims were subject to two different standards of review.  *Compl.* ¶ 4; *Federal Defendants'*

*Motion to Issue Modified Rule 16(B) Scheduling Order*; *Order* filed June 1, 2009.  Likewise,

there is nothing ambiguous or confusing about the Scheduling Order's setting of a briefing

schedule, not a trial date, for Count I, and the directive with respect to Count I that plaintiff

"shall file" a summary judgment motion by September 15, 2009.  *Joint Rule 16(b) Scheduling*

*Order*, ¶ 11.  With all due respect, plaintiff's candid admissions that the failure to file was due to

counsel's "mistake of comprehension" (for which there was "no excuse") as to how the case was

to be prosecuted, *Pl. Res.*, pg. 2, does not constitute a basis upon which to grant relief or avoid

summary dismissal.  *United States ex re. Shaw Environmental v. Gulf Insurance Company*, 225

F.R.D. 526 (E.D.Va. 2005) (Smith J.) ("'inadvertence, ignorance of the rules, or mistakes

construing the rules do not usually constitute 'excusable' neglect ...'" so as to grant leave to

extend the time under Rule 6(b) in which to serve a complaint), quoting *Pioneer Inv. Serv. Co. V.*

*Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993).

**II.    Plaintiff has failed to establish error in the decision of the MSPB affirming plaintiff's removal for unacceptable performance.**

**A.    Response to Plaintiff's Listing of Undisputed Facts.**

Defendants dispute plaintiff's recitation of facts as follows:

Pl. Fact Number 6 and 7:  Plaintiff's assertion that OPM had never performed

background investigations prior to 2005 is incorrect.  OPM was responsible for background

investigations up until 1996, until those functions were privatized; OPM resumed those functions in early 2005.  TRANSCRIPT_11-12.

Pl. Fact Number 8:  Plaintiff understates Philip Kopman's relevant experience and background in the field.  In addition to the experience cited, Mr. Kopman worked for OPM in the background investigation field from 1973 until 1996 when those functions were privatized. TRANSCRIPT_10.

Pl. Fact Number 9 and 10:  The implication that Mr. Kopman alone is responsible for creating and instituting the performance appraisal standards at issue here is incorrect.  The standards were developed through a collaborative effort by all regional managers (which included Mr. Kopman) and deputy chiefs, a team that included persons with "expansive, extensive, in-depth experience" in the field <u>and</u> which represented persons from the private sector, OPM and DSS.  TRANSCRIPT_25-27.  The standards were developed drawing on this collective body's private and public sector experience, and was applicable to all investigators nationwide.  TRANSCRIPT_14, 32, 61.

Pl. Fact Number 13:  Plaintiff's assertion that Mr. Kopman's 2005 "performance appraisal system" was not OPM-approved is misleading and misconstrues the facts in the record. The performance appraisal <u>system</u> (that is, the system that rates employees as unacceptable, minimally successful, etc.) was approved by OPM in 1986.  TRANSCRIPT_230, 233; TWYMAN_236.  In 2005, Mr. Kopman, along with all other regional managers and deputy chiefs, and in accordance with properly delegated authority, developed specific performance <u>standards and elements</u> for each agent position (that is, the standards that rated employees on, *inter alia*, SPDs, MOCs and ACDs).  TRANSCRIPT_233-234; TWYMAN_382, 405

(delegations).  Plaintiff points to no contrary evidence in the record for either of these assertions, but instead seeks to sow confusion by misconstruing terms and phrases, and reliance on counsel's own particular phrasing of questions at the administrative level.  This purported dispute is wholly illusory.  *See also* GARCIA_303-07.

Pl. Fact Number 14:  The inference plaintiff seeks to draw from the quoted material is refuted by that portion of the transcript plaintiff omitted from her recitation, including a response to a question posed by plaintiff's counsel.

> Ifft:   But the performance management system plan, that is our overall plan as being a five-level program [unacceptable, minimally successful, etc.].  And I do believe it also meets with our rating cycle.  We have that all approved.  But then the actual standards are broken down to each specific position.

> ALJ:   To your knowledge, is there any requirement that the actual standards and performance elements be approved by OPM.

> Ifft:   According to the delegation of our agency's authority, which is another attachment that I have given to [agency counsel], that is delegated down to the supervisory level, to approve the individual positions.

> ....

> Mr. Shoemaker:   So the thing you're testifying about, the performance management system plan, is different from a performance appraisal system; is that correct?

> Ifft:   The performance appraisal system is different than the performance elements and standard.  The approval for employee performance elements and standard are at the supervisory level.  Those are the elements that are included in our standard.

TRANSCRIPT_ 233-234.

Pl. Fact Number 15:  It is unclear what point plaintiff seeks to make in this assertion.  As already noted, the performance appraisal <u>system</u> was approved by OPM, and the performance <u>elements and standards</u> were developed by a body of regional managers and deputy chiefs,

pursuant to delegated authority.  TRANSCRIPT_230, 233-234; TWYMAN_236, 382, 405 (delegations).

Pl. Fact Number 16 and 17:  These assertions are immaterial.  The sole issues are whether the MSPB erred in finding that the performance appraisal system was OPM-approved, and whether the performance standards were valid.  *Pl. Res.*, pg. 1 ("Preliminary Statement"). Whether or not supervisors favored certain employees with easier assignments (which is denied), or plaintiff had occasional duties on both sides of Hampton Roads has no bearing or relevance on these issues.

Pl. Fact No. 18 through 21:  These assertions are mostly argument.  Plaintiff's assertion that a "significant majority" of employees worked off-the-clock to meet production quotas is not supported by the record.  Although the MSPB heard testimony that some agents *complained* about having to work "off-the-clock" to meet the performance standards, the actual testimony does not support plaintiff's definitive claim.  *See Def. Memo*, pg. 22-24 (discussing testimony of other employees); GARCIA_316-17.  In fact, the majority of the non-party agents that testified (four of seven), stated that they did not work off-the-clock to meet the performance standards. TRANSCRIPT_107, 123, 238, 255.

Pl. Fact No. 22:   The number of witnesses presented as to a particular issue is immaterial and irrelevant.  The only question before this Court is whether the MSPB's decision was a reasonable and rationale conclusion based on the evidence presented, and does not reflect clear error.  5 U.S.C. § 7703(c)(1) and (3); *Kelliher v. Veneman*, 313 F.3d 1270, 1276 (11th Cir. 2002). In any event, the majority of the non-party agents that testified (four of seven), stated that they

did not work off-the-clock to meet the performance standards.  TRANSCRIPT_107, 123, 238, 255.

Pl. Fact No. 23:  Plaintiff's performance at another agency is immaterial to whether the performance appraisal system was OPM approved, and the performance elements and standards were valid.  (In fact, plaintiff's past job performance has little relevance to the quality of her performance at the time of removal.  *O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 547 (4th Cir.1995) (acceptable job performance in the past does not establish acceptable job performance at the time of the termination.), rev'd on other grounds 517 U.S. 308 (1996).)

Pl. Fact No. 24:  Plaintiff's assertion that she could only meet production quotas by working off-the-clock, is refuted by her testimony that she was unable to meet acceptable performance even when she did work off-the-clock.  TRANSCRIPT_201.

Pl. Fact No. 25:  After September 2007, the standards for SPDs and MOCs were no longer "hard and fast" but were still used as considerations in evaluating employee productivity.  TRANSCRIPT_32-33, 40-42.  "[T]he idea that we totally abolished any reference to productivity numbers is not an accurate one."  TRANSCRIPT_41.  The ACD metric did not change.  TRANSCRIPT_33.  In any event, and as discussed below, any after-the-fact change to the performance standards is immaterial (and inadmissible) to the question of whether the standards, as they were at the time of plaintiff's removal, were valid.  *See* F.R.E. 407 (precluding admission of post-event remedial measures to prove culpable conduct).

**B.**     **Plaintiff failed to show the MSPB erred in finding that the performance standards under which she was evaluated were valid.**

Plaintiff argues that because some employees allegedly had to work off-the-clock to meet production quotas, the performance standards must be invalid. *Pl. Memo*, pg. 12-14. Plaintiff's argument fails to establish the MSPB's decision to the contrary was erroneous within the meaning of 5 U.S.C. § 7703(c).

Although plaintiff argues that the performance standards are invalid, nowhere in her response does she set forth what it means for standards to be "valid," much less analyze these standards in that context. As noted in defendants' opening brief, performance elements and standards are valid as long as they, "to the maximum extent feasible, permit the accurate evaluation of job performance on the basis of objective criteria ... related to the job in question." 5 U.S.C. § 4302(b)(1); *Rogers v. Department of Defense Dependents Schools*, 814 F.2d 1549, 1553 (Fed. Cir. 1987); *Wilson v. Department of Health and Human Services*, 770 F.2d 1048, 1052 (Fed. Cir. 1985). Agencies have "'great flexibility'" in developing and choosing the manner in which their employees should be evaluated, *Wilson*, 770 F.2d at 1054, and are "free to set its performance standards as high as it thinks appropriate, so long as those standards are objective and meet the other express requirements of section 4302(b)(1)." *Jackson v. Department of Veterans Affairs*, 97 M.S.P.R. 13, 18-19 (2004).

In her response, plaintiff neither argues nor disputes that the standards at issue here objectively permit an accurate evaluation of job performance or that she was fully aware of what those standards required of her. *See Def. Memo*, pg. 17-19, 24-25. Instead, plaintiff points to some evidence in the record that she claims supports her factual premise that off-the-clock work was necessary to meet the standards. *Pl. Memo*, pg. 12-14.

Plaintiff's argument, however, misunderstands and misconstrues the scope of review by this Court.  Section 7703(c) does not entitle plaintiff to a second bite at the apple in this Court. Rather, under § 7703(c)'s narrow and deferential standard of review, as long as the MSPB's finding is reasonable, rationale, and supported by some relevant evidence in the record, it must be affirmed.  *Kelliher*, 313 F.3d at 1276; *Inova Alexandria Hosp. v. Shalala*, 244 342, 350 (4th Cir. 2001) (APA case) (administrative decision must be upheld as long as there is a "rationale connection between the facts found and the choice made"); 5 U.S.C. § 7703(c).  The Court may not substitute its judgment for that of the MSPB.  *Kelliher*, 313 F.3d at 1276.

Plaintiff's broad assertion that every investigator testified that either they had to work off-the-clock hours to meet production quotas, or that others did, *Pl. Memo*, pg. 12, simply misrepresents the evidence.  Seven agents (other than plaintiff and her co-plaintiff Garcia) testified at the hearing.  *Def. Memo*, pg. 22-24.  Of those seven, four expressly testified that they personally <u>did not</u> work off-the-clock to meet the performance standards, TRANSCRIPT_107 (Karsen); 123 (Wright); 238 (Parker); 255 (Moore), and one other, who testified she did work off-the-clock, was "not certain" whether that was necessary to meet the performance standards.[1] TRANSCRIPT_102 (Fisher).

In addition, a former supervisor – called as a witness by plaintiff – testified he was unaware of investigators working on their own time to meet standards.  TRANSCRIPT_142

---

[1]  The remaining two agents did not present a compelling case that off-the-clock time was necessary.  The first (who also had production issues) acknowledged that he still received favorable ratings even after he stopped working off-the-clock, suggesting that such work was unnecessary.  TRANSCRIPT_79-81 (Cupper).  And the second, although stating he worked off-the-clock,  "didn't do a lot of it," and also acknowledged that he used "flex" time. TRANSCRIPT_87, 91-93 (Krack).  For her part, plaintiff could not meet the standards whether or not she worked off-the-clock.  TRANSCRIPT_190, 201-02.

(Burnette).  And lastly, the testimony further reflected that the overwhelming majority (about

98%) of the approximately 400 employees within plaintiff's region and working under the same

standards as plaintiff were able to achieve "at least a minimally successful level of performance,"

TRANSCRIPT_23, 42; approximately one-third of the region's investigative staff were

recognized at the "exceeds or outstanding" performance level, TRANSCRIPT_20; and almost

half of plaintiff's immediate co-workers under her first line supervisor received performance

awards.  TRANSCRIPT_60.  This evidence plainly supports the MSPB's factual finding and,

therefore, that decision must be affirmed.[2]

    Plaintiff also argues that the agency's post-removal modification of the SPD and MOC

performance metrics from hard and fast standards to considerations is a "critical indictment of

the system."  *Pl. Memo*, pg. 12.  In fact, such changes are neither material, nor even admissible,

to prove the standards under which plaintiff was evaluated and removed were invalid within the

meaning of 5 U.S.C. § 4302(b)(1).  *See Albrecht v. Baltimore & Ohio R. Co.*, 808 F.2d 329, 331-

32 (4th Cir. 1987) (admissibility of post-conduct remedial measures, when the prior feasibility of

such measures at the time was not issue, was error under F.R.E. 407);*Werner v. Upjohn Co., Inc.*,

628 F.2d 848, 853+ (4th Cir. 1980) (evidence of revised 1975 drug warning inadmissible

pursuant to F.R.E. 407 to prove 1974 warning was insufficient and breach of the standard of

care); *Stahl v. Board of Com'rs of Unified Government of Wyandotte County*,  244 F.Supp.2d

---

    [2]  While some employees related complaints they heard from others about the rigors of
the performance standards, GARCIA_316, such vague complaints are not probative of whether
these other employees had to work off-the-clock to meet the performance standards.  This is so
since it was undisputed that investigators worked "completely independently of each other,"
TRANSCRIPT_58, and that individual investigators were in no position to evaluate the work
habits or efficiency of fellow investigators, *e.g.* TRANSCRIPT_93 (Krack); 101 (Fisher); 119
(Karsen).

1181,1188 (D.Kan.,2003) (in discrimination case, evidence that fitness requirements were changed after plaintiff filed suit was inadmissibile: "[P]ursuant to Federal Rule of Evidence 407, evidence of defendant's subsequent remedial conduct is inadmissible to prove culpable conduct."), aff'd 101 Fed. Appx. 316 (10th Cir. 2004).  The MSPB correctly understood that it was the standards in place at the time that were relevant.  TRANSCRIPT_52.

Agencies are entitled to "'great flexibility'" in developing and choosing the manner in which their employees should be evaluated, *Wilson*, 770 F.2d at 1054, and courts generally should not stand in the shoes of a "super personnel department weighing the prudence of employment decisions," *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998). Because the agency sought to make the standards better, does not prove that the ones in place at the time of plaintiff's removal were bad.  *See* TRANSCRIPT_40-42 (Kopman explaining why the standards were modified).  To hold otherwise creates a disincentive for employers to ever seek to improve its policies or standards, lest such changes be thrown back at them as "evidence" of the deficiency of the earlier policies or standards.

    **C.**    **Plaintiff's Fair Labor Standards Act (FLSA) argument should not be considered, but is, in any event, without merit.**

Plaintiff also argues that the MSPB's decision should be set aside, because her removal was arrived at through harmful procedural error, namely, that employees were purportedly

required to work off-the-clock to meet production quotas in alleged violation of the FLSA.[3]  *Pl. Memo*, pg. 13-14.  This argument is without merit for several reasons.

As set forth previously, the MSPB's decision encompassed two separate and distinct findings.  First, it was required to decide whether the agency met its burden of proof to sustain plaintiff's removal by substantial evidence in accordance with 5 U.S.C. § 7701(c)(1)(A).  Second, even if that burden was met, the MSPB would not sustain the removal decision if plaintiff proved an affirmative defense in accordance with 5 U.S.C. § 7701(c)(2)(A).  The MSPB found that the agency met its burden of proof, but that plaintiff did not.  GARCIA_303-23, 331-33.

Plaintiff's complaint plainly identified only the first of these decisions, that is, the MSPB's decision under § 7701(c)(1)(A) that the agency had met its burden of proof, as subject to challenge and being "[t]he gravamen of the non-discrimination claims."  *Compl.* ¶ 3.  Plaintiff's current response is in accord, reiterating that her challenge is limited to whether the performance appraisal system was OPM-approved, and whether the performance standards were valid (i.e., elements the agency had to prove).  *Pl. Memo*, pg. 1.  Plaintiff is bound by her framing of the relevant issues in the complaint, and having failed to raise this specific challenge in her complaint, plaintiff should not be permitted to argue it now.

Even if the Court were to consider plaintiff's belated FLSA challenge, there is no basis to conclude that the MSPB rejection of plaintiff's harmful procedural error defense was arbitrary

---

[3]  An FLSA claim arises when, regardless of the reason, an employer permits an employee to work uncompensated time beyond the normal work week.  29 U.S.C.A. § 207(a)(1).  *See also*  29 U.S.C.A. § 203(g) (defining "employ").  "It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1947) (emphasis added).

and capricious.[4]  *See Boylan v. United States Postal Service*, 704 F.2d 573, 576-77 (11th Cir.

1983) (reviewing denial of affirmative defense under § 7703(c)(1)'s arbitrary and capricious

prong), *cert. denied*, 466 U.S. 939 (1984).  As with plaintiff's challenge to the validity of the

performance standards, nowhere does plaintiff address what it means for there to be "harmful

procedural error," or why a purported FLSA violation would constitute such error.  Examination

of same reveals the fatal flaws in plaintiff's argument.

> Harmful procedural error means:
>
> Error by the agency in the application of its procedures <u>that is likely to have</u>
> <u>caused the agency to reach a conclusion different than the one reached in the</u>
> <u>absence or cure of the error</u>. The burden is upon the appellant to show that the
> error was harmful, i.e., that it caused substantial harm or prejudice to his or her
> rights.

5 C.F.R. § 1201.56(c)(3) (emphasis added).  Purported procedural error "must cast doubt upon

the reliability of the agency's factfinding or decision," *Cornelius v. Nutt*, 472 U.S. 648, 663

(1985), and "[u]nless it is likely that an alleged error affected the result, its occurrence cannot

have been prejudicial," *Parker v. Defense Logistics Agency*, 1 M.S.P.B. 489, 493 (1980).  As the

Supreme Court has explained:

> We do not believe that Congress intended to force the Government to retain these
> erring employees solely in order to "penalize the agency" for nonprejudicial
> procedural mistakes it committed while attempting to carry out the congressional
> purpose of maintaining an effective and efficient Government.

*Cornelius*, 472 U.S. at 663.  The MSPB correctly understood this standard.  GARCIA_331.

---

[4]  Plaintiff again seems to misconstrue the Court's scope of review.  It is not the
responsibility of this Court to "determine[ if] she proved her affirmative defense."  *Pl. Memo*, pg.
13.  The Court should not be making that *de novo* determination, but only reviewing whether the
MSPB's decision in that regard was reasonable, rationale, and supported by some relevant
evidence in the record.  And if so, the MSPB's decision must be affirmed, even if this Court
might have decided the case differently.

It was plaintiff's burden before the MSPB to prove harmful procedural error, 5 U.S.C. §

7701(c)(2), and plaintiff's burden before this Court to show the MSPB erred in finding that she

failed to meet that burden, 5 U.S.C. § 7703(c)(1).  Even if it is assumed plaintiff proved before

the MSPB that there was a violation of FLSA (which is denied),[5] there is no evidence (or

argument) that plaintiff proved the purported FLSA violation made any difference in the

outcome of her case, as is required to establish harmful procedural error.  Plaintiff simply

identifies no evidence in the record to demonstrate how such purported FLSA violation cast

doubt on the agency's decision to remove her, or why, absent the purported violation, she would

not have been removed.

On the contrary, insofar as plaintiff takes the position that working off-the-clock was

required to meet production quotas – although plaintiff was unable to meet her production

standards whether or not she worked off-the-clock, TRANSCRIPT_190, 201-02 – had there been

no purported FLSA violation (i.e, no requirement to work off-the-clock), plaintiff could never

have met her production quotas anyway.  The end result – unacceptable performance, and

removal therefore – would have been exactly the same.  Because there is a complete absence of

---

[5]  Plaintiff again asserts that it is "plainly demonstrated that a majority of investigators were compelled to work personal, uncompensated time" to meet production quotas.  *Pl. Memo*, pg. 13-14.  As the discussion above establishes, this proposition is far from plain, nor does the evidence clearly establish the employees were required to "give up a substantial measure of his [personal] time and effort" in work related endeavors.  *Anderson*, 328 U.S. at 692 (emphasis added).  The MSPB observed that "there was consistent testimony that the agency publicly eschewed any practice of uncompensated overtime and there is sufficient evidence that many successful agents did not engage in it."  GARCIA_332.  This was a reasonable and rationale conclusion which was supported by some relevant evidence in the record, and, accordingly, must be affirmed.

proof on this critical element of her affirmative defense, the MSPB's decision rejecting that affirmative defense could never be erroneous.

> **D.      Plaintiff failed to show the MSPB erred in finding that plaintiff's removal was taken under an OPM-approved performance appraisal system**.

Plaintiff does not argue that the performance appraisal system that rates employees as unacceptable, minimally successful, etc. was approved by OPM in 1986.  TRANSCRIPT_230, 233; TWYMAN_236.  Instead, plaintiff's sole argument is that the specific performance elements and standards upon which she was judged, namely, SPDs, MOCs and ACDs, also had to be approved by OPM and that the evidence failed to show that had been accomplished.  *Pl. Memo*, pg. 14-15.

As defendants noted, however, OPM approval of performance elements and standards is not required and is not the law.  *Def. Memo*, pg. 14-16.  Plaintiff cites no authority to the contrary; accordingly, she has failed to demonstrate the MSPB erred on this point.

***Conclusion***

Count I of the complaint should be dismissed for failure to prosecute.  Even if the Court elects to resolve Count I on the merits, plaintiff has failed to establish any error on the part of the MSPB upholding the agency's removal of plaintiff.  Accordingly, the decision of the MSPB as to plaintiff's non-discrimination claim (Count I) should be affirmed, and Count I dismissed.

Respectfully submitted,

M. JOHN BERRY, Director
United States Office of Personnel Management

UNITED STATES OFFICE OF PERSONNEL
MANAGEMENT
Defendants

NEIL H. MACBRIDE
United States Attorney

By:        _____//s//_____
Kent P. Porter
Assistant United States Attorney
Virginia State Bar No. 22853
Attorney for Federal Defendants
8000 World Trade Center
101 West Main Street
Norfolk, Virginia 23510
Phone: 757.441.6331
FAX: 757.441.6689
EMAIL: Kent.Porter@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on the 29th day of October, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following filing user(s):

James H. Shoemaker, Jr., VSB #33148
Veronica Meade-Sheppard , VSB #66727
Patten, Wornom, Hatten & Diamonstein, LLC
12350 Jefferson Avenue, Suite 300
Newport News, Virginia 23602
Phone: 757.223-4580
FAX: 757.223-4518
EMAIL: jshoemaker@pwhd.com
          vsheppard@pwhd.com

        __/s/_____
Kent P. Porter
Assistant United States Attorney
Virginia State Bar No. 22853
Attorney for Federal Defendants
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA  23510
757- 441-6331 Office
757-441-6689  Fax
Kent.Porter@usdoj.gov